## Akers v. Commonwealth

(Decided Oct. 5, 1937.)

B. M. JAMES for appellant.

HUBERT MEREDITH, Attorney General, and W. OWEN KELLER, Assistant Attorney General, for the Commonwealth.

OPINION OF THE COURT BY STANLEY, COMMISSIONER—Affirming.

The appeal is by Hillard Akers from a judgment confining him in the penitentiary for five years for having killed A. G. Turner at Wheelwright Junction, in Floyd county, on Sunday night, September 20, 1936.

A witness related that on Saturday afternoon the defendant was apparently asleep in a restaurant or "beer joint," as he called it, and when he awakened him and asked where the girls were he replied, "A fellow by the name of Turner got them in his car and took them all away." He further said something about Turner "having more money or being a better sport and took all the girls away." On Sunday afternoon, appellant made some statements to a friend who worked under Turner, to the effect that he wouldn't have any work the next day and, referring to Turner, said: "He

can't buy my women and get by with it." This witness, however, appears in a bad attitude.

That evening about 9 o'clock, the appellant and Della Johnson left a restaurant together, and as they walked down the road a short distance passed a group of men, among whom were Gladis Little and the deceased, Turner. Little, addressing the girl, said "Hello Cutie," or made some such flippant remark. The appellant turned and, according to the evidence of the Commonwealth, had a pistol in his hand. Little apologized, and the other boys undertook to quiet Akers. The girl called him to come on, saying that Little was her "kin people" and to pay no attention to him. Addressing Turner, Akers said, "You are too damn smart for your breeches," and started shooting at him. Turner made no effort to draw a weapon. Little grabbed appellant after the first two shots and tried to hold the pistol off of Turner. Akers shot his pistol empty and then went down the creek. Turner fell mortally wounded and died in a short time. His pistol was under his belt and coat and he had made no attempt to get it out. Such is the substance of Little's testimony, which is substantially the same as that of some other witnesses. The evidence was conflicting as to whether these men were drunk. Others testified to having examined Turner's pistol and found it not to have been fired.

The defendant testified that he was a deputy constable and duly sober on this occasion. As he and Della Johnson approached the group of men, he saw one of them with "a little bright looking bottle." Little was very drunk. He testified:

"I had my mind made up that they were all drunk and I tried to slip by them; I didn't have any way to take them to jail right then and I walked right on trying to keep them from seeing me; I stopped by them three or four steps and one of them said, 'hello, by God cutie' or something like that."

He turned and saw Turner holding a pistol down in front of himself. He and Little had some argument and the girl fainted, as he thought. Further, he testified:

"I saw there was going to be trouble and was afraid to try to make the arrest. He had his gun out and so handy, and the girl said, 'come on and let's go.' I knew it was time to go and I went to

just kinda turn around to go and as I did that Turner said, 'shoot by God, or give up your gun.'"

He then drew a pistol and Little grabbed hold of it. Turner fired twice at him before he shot. He exhibited his coat to the jury to sustain his testimony that a bullet had gone through it. The defendant had not known Turner previously and denied seeing the other witnesses who testified to his implied threats. On cross-examination he stated that the main reason he had tried to pass the three men without arresting them was that he didn't have any way to take them to jail. Several other witnesses substantially corroborate the defendant in his claim of attack and self-defense. Della Johnson couldn't say who fired the first shot, but it was after two had been fired before Little seized Akers. There was some impeachment in evidence in rebuttal.

It is manifest that the conflict in evidence made a case for the jury and that the verdict is not flagrantly against the evidence.

An instruction was given covering the rights of the defendant as a peace officer to effect the arrest of Turner for committing a public offense in his presence. We may agree with the appellant that the instruction is defective in that its effect was to limit his rights only to acting in self-defense if he was attacked in the resistance offered to his efforts to make an arrest. But this was more than the evidence warranted. The evidence did not authorize the giving of any instruction on this point. The defendant's own testimony negatived any purpose to make an arrest at the time. Therefore, the instruction, if erroneous, was not prejudicial.

Nor do we find merit in the argument that the appellant was entitled to an instruction to the effect that he had the right to defend himself against Gladis Little as well as the deceased, Turner. We think the evidence presented in behalf of the defendant showed that Turner alone made the attack and that Little interfered only in trying to avoid the killing. The defendant did not testify to anything showing he was in danger at the hands of Little or any person other than Turner.

Judgment affirmed.